UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMIDA B.,<br><br>         Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Commissioner of Social Security,<br><br>         Defendant. | Case No.:  20-cv-01984-JLB<br><br>**ORDER RE: PLAINTIFF'S MERITS BRIEF**<br><br>**(ECF Nos. 11, 12)** |

On October 8, 2020, plaintiff Armida B. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") benefits.  (ECF No. 1.)

Now pending before the Court and ready for decision is Plaintiff's merits brief in support of reversal and/or remand.  (ECF No. 11.)  The Commissioner filed a cross motion and opposition to Plaintiff's merits brief (ECF Nos. 12, 13), and Plaintiff filed a reply (ECF No. 14).  For the reasons set forth herein, the Court **GRANTS** Plaintiff's merits brief, **DENIES** the Commissioner's cross motion, and remands this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

///

## I. PROCEDURAL BACKGROUND

On or about August 23, 2013, Plaintiff filed an application for SSI benefits under Title XVI of the Social Security Act, alleging disability beginning January 1, 2013.  (ECF No. 8, Certified Administrative Record ("AR"), at 326–34.)  After her application was denied initially and upon reconsideration (AR 164–72, 177–81), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ").  (AR 182–85.)  An administrative hearing was held before ALJ Larry Johnson on July 19, 2016.  (AR 68–113.)  Plaintiff testified at the hearing, unrepresented by counsel.  (AR 68–113.)

As reflected in his February 23, 2017 hearing decision, ALJ Johnson found that Plaintiff was not disabled, as defined in the Social Security Act, from August 23, 2013, through the date of decision.  (AR 137–59.)  Plaintiff appealed and the Appeals Council vacated the decision and remanded the case back to an ALJ.  (AR 160–63.)  A second administrative hearing was held on June 18, 2019, before ALJ James Delphey.  (AR 60–67.)  On October 17, 2019, Plaintiff, represented by counsel, and a vocational expert ("VE"), testified at a second hearing before ALJ Delphey.  (AR 36–59.)  During the second hearing before ALJ Delphey, Plaintiff amended her alleged onset date of disability to June 30, 2016, her fiftieth birthday.  (AR 39.)

On November 26, 2019, ALJ Delphey found that Plaintiff had not been under a disability, as defined by the Social Security Act, since June 30, 2016, the amended alleged onset date.  (AR 29.)  The ALJ's decision became the final decision of the Commissioner on August 10, 2020, when the Appeals Council denied Plaintiff's request for review.  (AR 1–6.)  This timely civil action followed.  (*See* ECF No. 1.)

## II. SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  *See* 20 C.F.R. § 416.920.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2016, the amended alleged onset date.  (AR 17.)

///

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, knee osteoarthritis, and asthma.  (AR 17.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (AR 22.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform less than a full range of light work" with the following limitations:

> [Plaintiff] can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolding; can frequently balance, stoop, and crouch; can occasionally kneel and crawl; needs to avoid concentrated exposure to dust, fumes, and pulmonary irritants; and can be on her feet no more than four hours (standing or walking) out of an eight-hour workday.

(AR 22.)

For purposes of his step four determination, the ALJ determined that Plaintiff had no past relevant work.  (AR 28.)

The ALJ then proceeded to step five of the sequential evaluation process.  Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy (*i.e.*, assembler of small products, inspector, marker), the ALJ found that Plaintiff was not disabled under the law from June 30, 2016, through the date of decision. (AR 28–29.)

## III.   PLAINTIFF'S CLAIM OF ERROR

As reflected in Plaintiff's merit's brief, the disputed issue that Plaintiff is raising as the ground for reversal and/or remand is as follows:

> 1.   Whether there is medical support for the ALJ's RFC determination?  (ECF No. 11 at 16–22.)

///

///

## IV.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). In reaching his findings, the ALJ is entitled to draw inferences which logically flow from the evidence. *Id.*

## V.   DISCUSSION

Plaintiff argues there is no medical support for the ALJ's RFC determination. (ECF No. 11 at 16–22.) Plaintiff claims that she suffers from multiple herniated discs in her cervical and lumbar spine and arthritis in both knees. (*Id.* at 22.) She contends that the two doctors who saw her after her alleged onset date of disability, Michael I. Keller, M.D., and Ibrahim M. Yashruti, M.D., opined that she is more limited in her standing and walking than indicated by her RFC and that she requires an assistive device for prolonged ambulation. (*Id.*)[1] In short, Plaintiff argues that the ALJ improperly rejected the opinions

---

[1]   Plaintiff summarizes her argument regarding the alleged error as follows:

The ALJ inexplicably determined Plaintiff did not need an assistive device to ambulate, despite two recent doctors [Drs. Keller and Yashruti] stating otherwise. He stated Plaintiff's condition improved, with no

of Dr. Keller and Dr. Yashruti.  Accordingly, the Court will address below whether the ALJ properly considered the opinions of Dr. Keller and Dr. Yashruti.

### A.    Legal Standard

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  The medical opinion of a claimant's treating doctor is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2).  When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record.  *Id.* § 416.927(c)(2)–(6).  Greater weight is also given to the "opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. § 416.927(c)(5).  "A doctor's specialty is especially relevant with respect to diseases that are 'poorly understood' within the rest of the medical community." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004)).

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

---

medical support for this opinion.  His finding Plaintiff can stand and walk four of eight hours also lacks any medical support.
(*Id.*)

providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216).

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). Additionally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (emphasis in original).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012–13. However, an ALJ "may disregard [a] medical opinion that is brief, conclusory, and inadequately supported by clinical findings." *Britton v. Colvin*, 787 F.3d 1011, 1012 (9th Cir. 2015) (per curiam); *see also Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014).

A claimant's RFC assessment is a determination of the most a claimant can still do despite his or her physical and mental limitations. *See* 20 C.F.R. § 416.945(a)(1); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (explaining that the RFC is the most a claimant can still do despite his or her limitations). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are

reasonably attributed to a medically determinable impairment." *Robbins v. Comm'r of Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted); *see also* Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   "When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

**B.     Analysis**

     1.     ALJ's Decision

In assessing Plaintiff's physical RFC, the ALJ addressed the medical history detailing Plaintiff's back, knee, and joint pain as follows:

> December 2012 x-rays of the claimant's right knee showed mild osteoarthrosis involving the medial femorotibial compartment and the patellofemoral joint.  X-rays of her left knee showed degenerative arthrosis. [AR 524, 526.]

> During a January 2014 consultative orthopedic evaluation with Payam Moazzaz, M.D., the claimant reported a history of bilateral knee pain, right shoulder pain, and low back pain.  Upon exam, her gait was normal and she was not using an assistive device.  She had tenderness with range of motion testing of her right shoulder.  She gave poor effort with range of motion testing of her thoracolumbar spine.  Straight leg raise testing was negative.  She had pain with range of motion testing of her knees.  However, there was no effusion or crepitus.  Both knees were stable to varus and valgus testing.  She had full strength in her extremities with intact sensation.  X-rays of her right knee showed mild narrowing of the medial compartment joint space and x-rays of her lumbar spine showed no scoliosis or fracture and disc space heights were maintained.  X-rays of her right shoulder were unremarkable.  [AR 567–572.]

> February 2014 x-rays of her lumbar spine showed degenerative disc disease at L4-L5 and L5-S1.  [AR 614.]  In May 2014, the claimant was noted to have a history of asthma as well as a remote history of accidental exposure to fumigation in December 2009.  The claimant has attributed the sudden onset of pain to this exposure.  [AR 576, 873.]  Pain management records from May 2014 indicate that she rated her pain level as a 3/10.  [AR 713.]

A May 2014 MRI of her cervical spine showed disc desiccation with mild associated loss of disc height at C5-C6 and C6-C7; a C5-C6 broad-based posterior disc herniation, which abuts the anterior aspect of the spinal cord, there was concurrent bilateral uncovertebral joint degenerative change, and disc material and uncovertebral joint degenerative change causing stenosis of the left greater than the right bilateral neural foramen that deviate the bilateral C6 exiting nerve roots; a C6-C7 broad-based posterior disc herniation, which abuts the anterior aspect of the spinal cord, there was concurrent bilateral uncovertebral joint degenerative change, disc material and uncovertebral joint degenerative change causing stenosis of the bilateral neural foramen that deviated the bilateral C7 exiting nerve roots; and straightening of the normal cervical lordosis, which may be positional in nature or due to muscle spasm. [AR 655.]

A May 2014 MRI of her lumbar spine showed disc desiccation at L1-L2, L4-L5, and L5-S1 and multilevel broad-based posterior disc herniations that caused stenosis. [AR 659.] A May 2014 MRI of her thoracic spine showed mild focal disc herniation at T10-T11, which caused mild stenosis. [AR 663.] A May 2014 MRI of her right knee showed minimal tricompartmental osteoarthritic change; mild globular increased signal intensity in posterior horn of medial meniscus most consistent with mild intrasubstance degeneration; and a tear was not entirely excluded. [AR 651.]

In May 2015, she sought emergency treatment for right knee pain. X-rays of her right knee showed mild medial compartment joint space narrowing compatible with degenerative disease; and a joint effusion. [AR 767, 775.] In October 2015, she was treated with an injection for generalized pain. At the time, straight leg raise testing was negative. [AR 875.] Her asthma medication was refilled in September 2016. Notably, findings from a respiratory exam were unremarkable and findings from a musculoskeletal exam indicated that both her gait and station were normal. [AR 1104–05.]

Pain management records from October 2016 indicate that she was treated with a knee injection. [AR 960.] In April 2017 and October 2017, she reported that her medication was allowing for increased mobility and function. [AR 992, 1016.] February 2018 x-rays of her bilateral knees showed degenerative changes of the patellofemoral joints. [AR 1270.] She continued to report back pain in September 2018. [AR 1217.] She was continued on her pain medication regimen in December 2018 and April 2019. [AR 1039, 1055.]

Treatment notes from May 2019 indicate that her posture was within normal limits. There was no observable gait abnormality and straight leg raise testing was negative. [AR 1061–62, 1184]. Exam findings from June 2019 indicate that she had tenderness in her cervical spine, lumbar spine, and knees, but she had full strength in her upper and lower extremities. Notably, there is no mention of use of an assistive device for ambulation [AR 1078].

During an August 2019 consultative orthopaedic evaluation with Ibrahim Yashruti, M.D., the claimant reported a history of neck pain, back pain, and extremity pain. She reported that she sometime uses a cane or a walker. Upon exam, she was using a chair walker and she reported that she is unable to stand or walk without the walker. Examination of her cervical and lumbar spine revealed tenderness and reduced range of motion. She also had pain in her knees and she declined any movement. Muscle testing revealed no weakness. Straight leg raise testing was negative [AR 1328–39].

(AR 23–25.)

The ALJ gave "some weight" to the State agency medical consultants at both levels of review who opined in February 2014 and July 2014 that Plaintiff was limited to medium work with some additional postural restrictions. (AR 25, 120–21, 131–33.) The ALJ also gave "some weight" to the January 26, 2014 opinion of Dr. Moazzaz, a consultative examiner, who opined, *inter alia*, that Plaintiff can stand and/or walk for six hours in an eight-hour workday and can sit for six hours in an eight-hour workday with normal breaks. (AR 26, 567–71.) Additionally, the ALJ gave "some weight" to the opinion of Dr. Yashruti, a consultative examiner, who opined on August 22, 2019, *inter alia*, that Plaintiff is able to stand and walk on level ground without an assistive device two hours a day, one hour at a time, and is able to ambulate with a cane a total of six hours a day but is unable to walk on uneven ground. (AR 26, 1328–39.) Lastly, the ALJ gave "little weight" to the opinion of Dr. Keller, who opined on June 13, 2019, *inter alia*, that Plaintiff can only stand, walk, and/or sit for twenty minutes in an eight-hour workday and needs a cane to ambulate. (AR 27, 1082.)

///

///

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2.   <u>Michael I. Keller, MD</u>

a.   *Medical Examination and Opinion*

Plaintiff began seeking treatment from Michael I. Keller, M.D., in February 2019 and saw him monthly through at least June 2019.   (AR 1076–80, 1229–51.)[2]   On June 12, 2019, Plaintiff saw Dr. Keller with her chief complaint being multiple joint pain. (AR 1076.)   Plaintiff reported muscle aches, muscle weakness, joint pain, and swelling in her joints.   (AR 1077.)   She reported stiffness in the morning that lasts sixty minutes, but no back pain and no swelling in the extremities.   (AR 1077.)   Plaintiff also reported that she did not have restless legs or any dizziness, cramping, tightness, soreness, or numbness. (AR 1077.)   At the time of the appointment, Plaintiff reported that her pain was 10/10 but improving.   (AR 1077.)   She indicated her pain was constant, but it was not a dull, sharp, or throbbing pain.   (AR 1077.)

Dr. Keller reviewed Plaintiff's recent labs and tests.   (AR 1079.)   He noted that April 2019 x-rays of Plaintiff's spine showed mild spondylosis and C5-6 mild degenerative disc disease.   (AR 1079.)   He further noted that April 2019 x-rays of Plaintiff's shoulders and knees were normal, and x-rays of her feet showed mild osteoarthritis.   (AR 1079.) Lastly, he noted that an ultrasound of both feet showed degenerative changes of the feet with heel spurs, the left being severe and the right showing mild plantar fasciitis.   (AR 1079.)

Dr. Keller performed a physical exam on Plaintiff.   (AR 1078.)   His exam showed no tenderness or swelling of any joints.   (AR 1078.)   Plaintiff also had normal results on examination of her DIP, PIP and MCP joints and her wrists, elbows, shoulders, hips, knees, ankles, and feet.   (AR 1078.)   However, she had generalized bilateral tenderness of her

---

[2]   Some of Dr. Keller's medical notes in the AR are poor copies and difficult to read. The Court will therefore focus on Plaintiff's final visit before Dr. Keller offered his medical opinion as those notes can easily be read.   The Court notes that Plaintiff only cites to notes from her June 12, 2019 visit.   (ECF No. 11 at 14.)

shoulder joints and range of motion loss, and generalized tenderness of the IP joints of her feet.  (AR 1078.)  Plaintiff tested positive on a diffuse trigger point exam.  (AR 1078.)  Plaintiff had full range of motion of the cervical spine, but also demonstrated tenderness and pain in the thoracic spine and lower back pain on palpation.  (AR 1078.)  Plaintiff had full symmetrical muscle strength and normal grip strength.  (AR 1078.)

Dr. Keller noted that Plaintiff has a diagnosis of fibromyalgia syndrome with chronic widespread pain, as well as plantar fasciitis, cervical and lumbar spondylosis, and cervical degenerative disc disease.  (AR 1079.)  He stated that these "conditions are aggravated by prolonged standing/walking/bending, prolonged sitting, and by ADLs."  (AR 1079.)  For pain management, Dr. Keller noted that Plaintiff had been taking Oxycodone and Fentanyl and advised that she continue with these medications.  (AR 1078–79.)  He also noted that Plaintiff had been taking Lyrica and Effexor with only mild benefit, and therefore he discontinued both.  (AR 1079.)

The day following Plaintiff's appointment, Dr. Keller filled out a one-page, checklist Physical Capacities Evaluation form.  (AR 1082.)  Dr. Keller opined that Plaintiff could not sit or stand more than twenty minutes at a time, or total, in an eight-hour workday.  (AR 1082.)  He further opined that Plaintiff could not walk more than twenty minutes total in an eight-hour workday.  (AR 1082.)  He opined that Plaintiff could occasionally lift or carry up to five pounds, but never lift or carry anything over five pounds.  (AR 1082.)  Dr. Keller further opined that Plaintiff could engage in simple grasping with both hands but no fine manipulation, and she could not engage in pushing and pulling of foot controls.  (AR 1082.)[3]  Dr. Keller opined that Plaintiff could occasionally bend and reach, but never squat, crawl, or climb.  (AR 1082.)  Dr. Keller also opined that Plaintiff could not engage in activities involving unprotected heights, being around machinery, exposure to marked

_____

[3]     Dr. Keller checked both "Yes" and "No" to the question of whether Plaintiff can use her right and left hands for pushing and pulling arm controls.  (AR 1082.)  It is unclear what restrictions Dr. Keller intended to indicate.

20-cv-01984-JLB

changes in temperature or humidity, or exposure to dust, fumes, gases, but she could have mild involvement in driving automotive equipment.  (AR 1082.)  Lastly, Dr. Keller opined that Plaintiff requires a cane to ambulate.  (AR 1082.)

>          b.    *ALJ's Decision*

ALJ provided the following explanation for assigning little weight to Dr. Keller's opinion:

> Michael Keller, M.D., opined that the claimant is limited to occasional lifting and carrying of five pounds; and standing, walking, and/or sitting for 20 minutes each in an eight-hour workday.  Dr. Keller further opined that the claimant cannot perform fine manipulation with her upper extremities and she cannot use her feet for repetitive movements.  In addition, Dr. Keller opined that she can occasionally bend and reach, but she could never squat, crawl, or climb.  Notably, he also opined that she has no environmental limitations for pulmonary irritants, such as dust, fumes, or gases ([AR 1082]).  Dr. Keller's opinion is given little weight because the level of restriction proposed by his opinion is not consistent with or supported by the objective medical evidence, including his own exam findings, which indicates that the claimant has full strength in her extremities.  In general, the claimant's symptoms improved with treatment, including injections and medication, which she reported improved her ability to function.  In addition, her reported daily activities suggest a higher level of functioning than alleged.  Notably, the objective medical evidence does support environmental limitations related to pulmonary irritants given the claimant's history of asthma.

(AR 27.)

In determining Plaintiff's RFC, the ALJ rejected Dr. Keller's lifting and carrying restrictions, his standing and walking restrictions, and his limitations on Plaintiff's ability to engage in fine manipulation and pushing and pulling.  The ALJ further rejected Dr. Keller's restrictions on Plaintiff's bending, reaching, squatting, crawling, and climbing, as well as his restrictions on being around machinery, exposure to marked changes in temperature or humidity, and involvement in driving.  Lastly, the ALJ rejected Dr. Keller's opinion that Plaintiff requires a cane to ambulate.

///

///

20-cv-01984-JLB

c.   *Analysis*

In allocating little weight to Dr. Keller's assessment of Plaintiff, the ALJ provided four reasons: (1) Dr. Keller's restrictions were inconsistent with and unsupported by the objective medical evidence; (2) the restrictions were inconsistent with Dr. Keller's own exam findings; (3) Plaintiff's symptoms improved with treatment; and (4) Plaintiff's reported daily activities suggest a higher level of functioning than alleged.  (AR 27.)  As Dr. Keller's opinion is contradicted by other physicians, the ALJ "may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198.  The Court will address each of the reasons provided by the ALJ below.

i.   Inconsistent with and Unsupported by the Objective Medical Evidence and Dr. Keller's Medical Exam

The ALJ gave little weight to Dr. Keller's opinion because it was inconsistent with, and unsupported by, the objective medical evidence in the record, including his own exam findings, which indicate that Plaintiff "has full strength in her extremities."  (AR 27.) Inconsistency with the medical record is a specific and legitimate reason for rejecting a treating physician's opinion. *Tommasetti*, 533 F.3d at 1041.  Moreover, a conflict with a physician's own treatment notes is a specific and legitimate reason to reject a treating physician's opinion.  *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).  Generally, in assessing a medical opinion, "the more consistent a medical opinion is with the record as a whole, the more weight . . . will [be] give[n] to that medical opinion."  20 C.F.R. § 416.927(c)(4).

As noted by the ALJ in his decision, the medical record indicates that Plaintiff has full strength in her extremities.  (*See, e.g.*, AR 668 (1/16/2013 exam shows muscle strength and tone within normal limits); AR 636 (10/24/2013 exam shows strength is 5/5 in all extremities); AR 570 (Dr. Moazzaz's 1/26/2014 consultative exam found motor strength to be 5/5 throughout both upper and lower extremities); AR 812 (1/7/2015 exam showed

normal strength); AR 874–75 (10/28/15 exam showed 3+/5 strength in upper and lower extremities); AR 1332 (8/22/19 exam revealed no muscle weakness in lower and upper extremities).)  During his June 2019 examination, Dr. Keller himself found that Plaintiff had "full symmetrical muscle strength" and "normal grip strength," noting that "[a]ll muscle groups of the neck, upper and lower extremities both proximal and distal were tested and found to be at full strength."  (AR 1078.)

These findings are inconsistent with Dr. Keller's opined extreme physical limitations for Plaintiff, specifically his opinions that Plaintiff can never lift or carry more than five pounds and is unable to stand or walk more than twenty minutes in an eight-hour day.  *See Deluca v. Berryhill*, 721 F. App'x 608, 610 (9th Cir. 2017) (finding the ALJ provided a specific and legitimate reason for discounting an examining physician's opinion that the claimant would be unable to return to full time employment when his objective exam notes indicate the claimant had full strength and a normal gait); *Rangel v. Berryhill*, No. CV 17-02289 AFM, 2017 WL 8186744, at *2 (C.D. Cal. Dec. 29, 2017) (concluding that a finding of full motor strength undermines an opinion that a claimant could stand and walk for only twenty minutes at a time and lift less than ten pounds occasionally).[4]  Accordingly, the Court finds this is a specific and legitimate reason supported by substantial evidence for giving little weight to Dr. Keller's opinion.

///

---

[4]    Although "a person with fibromyalgia may have muscle strength, sensory functions, and reflexes [that] are normal," *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) (internal quotation marks and citation omitted), Plaintiff's primary complaints are not fibromyalgia related.  Plaintiff claims that she "needs an assistive device because of arthritis in her knees, pain from degenerative disc disease in her back, and arthritis in her feet." (ECF No. 11 at 9.)  Further, Plaintiff testified that the serious reason she was seeking disability benefits was pain in her "back, knees, and feet." (AR 48.)  And although Plaintiff has been diagnosed with fibromyalgia, the ALJ determined that her fibromyalgia is not a medically determinable impairment.  (AR 20–22.)  This conclusion has not been challenged by Plaintiff.

ii.     Plaintiff's Condition Improved with Treatment

Next, the ALJ gave little weight to Dr. Keller's opinion because Plaintiff's symptoms have generally "improved with treatment, including injections and medication, which she reported improved her ability to function." (AR 27.)  An impairment that can be controlled effectively by treatment or medication cannot be considered disabling. *Warre v. Comm'r of the SSA,* 439 F.3d 1001, 1006 (9th Cir. 2006).

As the ALJ noted in his decision, Plaintiff reported improved mobility and function with pain management. (AR 24–25 (citing AR 992, 1016).)  During her April 5, 2017, and October 5, 2017, appointments for pain management with David Smith, M.D., Plaintiff reported that injections to her right shoulder were "somewhat effective" and knee injections decreased her pain by 50% for two weeks. (AR 992, 1016.)  She also reported that taking Oxycodone and Duragesic patches relieved her pain by 60%, and while her pain never totally abated, her current dosages and frequency allowed for increased mobility and function. (AR 992, 1016.)

Plaintiff contends that her pain management records from Dr. Smith show no medical improvement from October 28, 2015, to May 28, 2019, despite aggressive treatment with Oxycodone, Fentanyl, and injections. (ECF No. 11 at 21.)  Plaintiff argues that Dr. Smith's assessments never suggested improvement, as he never removed Plaintiff's primary diagnosis and his prescriptions never lessened. (*Id.*)  However, one could alternatively conclude from Dr. Smith's failure to reduce Plaintiff's prescriptions that his prescribed course of action was appropriate and effective, particularly in light of the fact that Plaintiff continually reported to Dr. Smith an improved ability to function under his prescribed medication and treatment. (*See* AR 873–913, 935–1074.)

For example, on February 24, 2016, Plaintiff reported that an injection to her left foot abated 70% of her pain. (AR 889.)  On March 23, 2016, Plaintiff, who was using Oxycodone (one 30 mg tablet 3x/day), Duragesic/fentanyl (one 25 mcg/hr transdermal patch every 72 hours), and Naproxen (one 375 mg tablet 2x/day) to decrease the severity of her generalized pain, noted that her pain severity could be as low as 2/10 while

15

medicated.  (AR 893; *see also* AR 897 (4/27/2016 reported 2/10 pain while medicated).)  On May 25, 2016, Plaintiff reported that her current medication of Duragesic patches and Oxycodone were effective and decreased her pain by 80%, thus allowing for increased mobility and function.  (AR 902.)  On June 22, 2016, Plaintiff similarly reported that her medication decreased her pain by 75% to 80% and stated that she believed she would be confined to her bed with pain without the pain relief afforded by her prescribed Oxycodone and Duragesic patches.  (AR 906.)  On October 19, 2016, Plaintiff reported that her prescribed Oxycodone and Duragesic patches decreased her pain by 70%, allowing for increased mobility, function, and ability to perform her activities of daily living.  (AR 956.)  She also reported being in more pain that day because she had held a yard sale the prior Saturday and Sunday and had been doing more bending than usual.  (AR 956.)

On November 10, 2016, Plaintiff reported that her pain was 4/10 on a pain scale. (AR 968.)  The same was true on November 2, 2017, with Plaintiff claiming her medications abated 60% to 70% of her pain.  (AR 1020.)  In February 2017, Plaintiff started going to physical therapy, but stopped due to family problems.  (*See* AR 984, 1012, 1020.)  During that time, Plaintiff's Oxycodone was increased to one 30 mg tablet *four* times per day at her request to alleviate any pain brought on by physical therapy.  (*See* AR 1004–06.)  That prescription was lowered back to *three* times per day in December 2018.  (AR 1043.)[5]  On May 28, 2019, Plaintiff reported her pain level being 4/10 after Oxycodone. (AR 1061.)

At the hearing, Plaintiff testified that she was prescribed a cane by Dr. Smith almost two years prior, but she did not always use it to walk the two blocks to her doctor's office. (AR 44.)  During an appointment with Dr. Smith on October 4, 2018, Plaintiff was reported using a cane for the first time, but there is no indication that one was prescribed, and the

---

[5]   Plaintiff has submitted no pain management records of Dr. Smith between November 2017 and September 2018.  It is unclear whether none exist or if they were not requested and submitted.

medical record indicates that Plaintiff does not have any gait disturbance.  (AR 1029–30.)  Plaintiff claimed the cane made her feel safer when walking.  (AR 1029.)

For the foregoing reasons, the Court finds that improvement with treatment is a specific and legitimate reason supported by substantial evidence for giving little weight to Dr. Keller's opinion.

iii.    Plaintiff's Daily Activities Suggest Higher Functioning

Lastly, the ALJ gave little weight to Dr. Keller's opinion because Plaintiff's self-reported daily activities suggested she is capable of a higher level of functioning than alleged.  (AR 27.)  A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion.  *Ford*, 950 F.3d at 1155.

In considering Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms, the ALJ stated the following with respect to Plaintiff's self-reported testimony of daily activities:

> [Plaintiff's] reported daily activities suggests a higher level of functioning than alleged.  For example, she can drive, she can prepare meals, she is independent with personal care, she can perform general tasks around the home, and she can perform household chores, such as dusting, mopping, sweeping, vacuuming, laundry, dishes, and taking out the trash.

(AR 25.)  The ALJ repeated his statement that Plaintiff's "reported daily activities suggest a higher level of functioning than alleged" in giving little weight to Dr. Keller's opinion.  (AR 27.)

During a consultative examination with Dan Whitehead, Ph.D., on February 4, 2019, Plaintiff claimed that she was able to cook or prepare simple foods.  (AR 927.)  She also claimed that she requires no assistance with showering, dressing, bathing, toileting, or other personal hygiene activities.  (AR 927.)  She further claimed she is able to perform general daily tasks and activities around the home, which include dusting, general cleaning, mopping, sweeping, vacuuming, laundry, dishes, taking out the trash, and other general household tasks and duties.  (AR 927.)

Plaintiff's self-reported daily activities after the alleged onset date of disability are inconsistent with someone who cannot ambulate without a cane and who cannot stand, walk, or sit more than twenty minutes in an eight-hour day or carry more than five pounds. The activities are also inconsistent with someone who cannot push or pull or engage in fine manipulation.   Accordingly, the Court finds this is a specific and legitimate reason supported by substantial evidence for giving little weight to Dr. Keller's opinion.

Based on the foregoing, the Court finds that the ALJ did not err in giving little weight to Dr. Keller's opinion and his decision is supported by substantial evidence in the record.

### 3.   Dr. Yashruti

Next, Plaintiff argues that the ALJ improperly rejected Dr. Yashruti's opinion of Plaintiff's need for an ambulatory device, and by inference, Dr. Yashruti's limitation to two hours of unassisted standing in an eight-hour day.  (ECF No. 11 at 21.)

#### a.   *Dr. Yashruti's Opinion*

Plaintiff saw Dr. Yashruti on August 22, 2019, for a consultative orthopedic evaluation.  (AR 1328–35.)  Plaintiff's chief complaint was pain in the neck, right shoulder, hands, upper and lower back, hips, knee, ankle, and foot.  (AR 1328.)  Plaintiff reported that she had been in a car accident in December 2009 in which her chest hit the steering wheel.  (AR 1328.)  She started developing pain that gradually became total body pain.  (AR 1328.)  She described the pain as throbbing, dull, and sharp, and aggravated by sitting, standing, walking, and bending.  (AR 1328.)  She treated her pain with Oxycodone, Fentanyl patches, and antidepressants.  (AR 1328.)  She stated that the treatment "helped a little."  (AR 1328.)  She reported using a cane intermittently when she had pain on bad days for a year, as well as a chair walker.  (AR 1328.)  She stated that she alternated between the two and would use one or the other all the time.  (AR 1328.)

Dr. Yashruti reported that Plaintiff arrived using a chair walker for ambulation and claimed she was unable to stand or walk without it and declined walking on her toes or heels or squatting or standing without the walker.  (AR 1330, 1333.)  Dr. Yashruti observed no abnormalities of Plaintiff's cervical or dorsal spine and shoulders, but noted Plaintiff

experienced generalized tenderness when stroking the skin.  (AR 1330–31.)  Plaintiff demonstrated various degrees of range of motion of her cervical spine, with less than normal findings on right and left rotation, extension, and left side bending.  (AR 1331.)  Her right-side bending and forward flexion were normal.  (AR 1331.)  Plaintiff also demonstrated various degrees of range of motion of her shoulders, with less than normal findings on forward flexion, extension, and adduction.  (AR 1331.)  Her external and internal rotation were normal.  (AR 1331.)  Dr. Yashruti reported normal findings on examination of Plaintiff's elbows, wrists, and hands.  (AR 1331.)

Dr. Yashruti observed no deformity, masses, and/or scars on Plaintiff's lumbosacral spine, hips, knees, ankles, and feet, and no effusion upon palpation.  (AR 1332.)  Plaintiff complained of generalized tenderness in these areas but declined any movement, active or passive.  (AR 1332.)  Dr. Yashruti reported that a gross evaluation of selectively tested muscles in Plaintiff's upper and lower extremities revealed "no weakness."  (AR 1332.)  Plaintiff complained of decreased sensation over the medial aspect localized at the level of the knee.  (AR 1332.)  Dr. Yashruti also observed that Plaintiff's straight leg raising was negative, bilaterally, in both the sitting and supine positions, and the range of motion of her joints was "grossly normal."  (AR 1333.)  Dr. Yashruti also performed the Lasegue's and Febere's maneuvers on Plaintiff, and found both negative, bilaterally.  (AR 1333.)

Dr. Yashruti reviewed Plaintiff's medical records and summarized them as follows:

All medical records were reviewed by the examiner including a report by Michael Keller, MD dated June 12, 2019 where there is a description of x-ray of the cervical spine with mild spondylosis at CS-C6, mild degenerative disc disease, x-ray of the thoracic spine with mild spondylosis, x-rays of bilateral shoulder are normal, x-rays of bilateral knee are normal and x-rays of bilateral foot with mild osteoarthritis.  The report describes generalized pain listed no. 10 as primary fibromyalgia syndrome.

(AR 1333.)

Dr. Yashruti completed no diagnostic studies, but reported the following impression:

The claimant is a 53-year-old female who subjectively complains of neck, right shoulder, bilateral hand, upper back, low back, and bilateral hip, knee,

ankle and foot pain.  Objectively, she is constantly moaning and groaning with difficulty deep breathing.  She is using a chair walker to get around.  She declines walking on her toes or heels or squatting or standing without the walker.  She limits her cervical motion significantly.  She complains of tenderness even when stroking the skin in the neck, upper back and low back. She limits certain motions of the shoulders.  She declined any movement in the lumbar spine in any direction.  She states that she could not get on the examination table or lay down.  She complains of decreased sensation over the medial aspect of the knees.  Her medical records indicate the diagnosis of fibromyalgia.  There is a reference to x-rays of the cervical spine with mild spondylosis at C5-C6 and of the thoracic spine with mild spondylosis. Bilateral shoulder and knee x-rays were normal.  X-rays of the feet were referred to as mild osteoarthritis.

(AR 1333.)

Based on his evaluation, Dr. Yashruti opined that Plaintiff can sit six hours a day. (AR 1334.)  He further opined the following: Plaintiff can stand and walk on level ground without an assistive device two hours a day.  (AR 1334.)  She can ambulate with a cane for a total of six hours a day.  (AR 1334.)  She is unable to walk on uneven ground.  (AR 1334.) She can squat, kneel, crouch, and crawl occasionally.  (AR 1334.)  She can lift twenty pounds occasionally and ten pounds frequently and is able to reach with her arms and frequently manipulate her hands.  (AR 1334.)

After his examination, Dr. Yashruti also filled out a Medical Statement of Ability to do Work-Related Activities (Physical).  (AR 1329, 1335–39.)  Dr. Yashruti opined that Plaintiff could lift and carry up to ten pounds frequently and twenty pounds occasionally. (AR 1334.)  These limitations were supported by Plaintiff's mild cervical and thoracic spine degenerative disc disease and degenerative changes in her feet with heel spurs.  (AR 1329.)  Based on the same findings, Dr. Yashruti opined that Plaintiff could stand and walk only one hour at a time without interruption and could stand and walk two hours total in an eight-hour workday.  (AR 1335.)  Dr. Yashruti opined that Plaintiff does not require the

use of a cane to ambulate.[6]  (AR 1335.)  Dr. Yashruti further opined that Plaintiff could frequently reach, handle, finger, feel, push, and pull with both her right and left hands.  (AR 1336.)  Plaintiff could also frequently operate foot controls with her right and left feet.  (AR 1336.)

With respect to postural activities, Dr. Yashruti opined that Plaintiff could never climb stairs, ramps, ladders, or scaffolds, and could occasionally balance, stoop, kneel, crouch, and crawl.  (AR 1337.)  These limitations were supported by Plaintiff's plantar fasciitis in her feet and degenerative joint disease in her feet.  (AR 1337.)  With respect to environmental limitations, Dr. Yashruti opined that Plaintiff could never be exposed to unprotected heights or moving mechanical parts, but she could occasionally operate a motor vehicle.  (AR 1338.)  Lastly, with respect to Plaintiff's daily activities, Dr. Yashruti opined that Plaintiff could travel without a companion for assistance, ambulate without using a wheelchair, walker, or two canes or two crutches, use standard public transportation, climb a few steps at a reasonable pace with the use of a single handrail, prepare a simple meal and feed herself, and care for her personal hygiene.  (AR 1339.)  Dr. Yashruti further opined that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces.  (AR 1339.)

b.   *ALJ's Decision*

The ALJ provided the following explanation for allocating "some" weight to Dr. Yashruti's opinion:

> Dr. Yashruti's opinion is given some weight because it is consistent with and supported by the medical evidence, which indicates that the claimant has some exertional and postural restrictions.  However, the objective medical evidence does not support the level of restriction or all of the limitations proposed by the Dr. Yashruti's opinion.  The claimant does not require an assistive device to walk and she has full strength in her extremities.  Manipulative limitations are not supported by exam findings.  The claimant is able to perform

---

[6]   Dr. Yashruti opined that use of a cane increased Plaintiff's ability to walk from two hours a day total to six hours a day.  (AR 1334.)

household chores that require a number of manipulative movements and examination of her hands was normal at the consultative exam. Overall, her physical symptoms improved and stabilized with treatment. There is also a question of the claimant's effort at the two most recent consultative exams. Dr. Whitehead did not provide an opinion because of the claimant's lack of effort at the February 2019 [mental] consultative exam and there appears to be a similar lack of effort at the June 2019 consultative exam with Dr. Yashruti. For example, the claimant would not cooperate with range of motion testing and merely brushing her skin elicited expression of pain.

(AR 26–27.)

Accordingly, the ALJ rejected Dr. Yashruti's opinions that Plaintiff was able to stand and walk on level ground without an assistive device for only two hours a day and would be unable to walk on uneven ground. The ALJ also rejected Dr. Yashruti's limitations on Plaintiff's ability to crouch, squat, climb ramps and stairs, balance, and stoop. In addition, the ALJ did not incorporate all of Dr. Yashruti's opined environmental limitations.

### c. *Analysis*

In allocating "some weight" to Dr. Yashruti's opinion, the ALJ provided the following reasons for rejecting the level of restriction or all of the limitations proposed by the Dr. Yashruti: (1) the objective medical evidence does not support the level of restriction or all of the proposed limitations; (2) Plaintiff's physical symptoms have improved and stabilized with treatment; and (3) Plaintiff gave questionable effort during her examination. (AR 26–27.) As Dr. Yashruti's opinions are contradicted, the ALJ could only reject his opinions by providing specific and legitimate reasons that are supported by substantial evidence. *Ryan*, 528 F.3d at 1198. The Court discusses each reason the ALJ provided for according only "some weight" to Dr. Yashruti's opinion below.

### i.   Medical Record Does Not Support Proposed Restrictions

First, the ALJ rejected the level of restriction proposed by Dr. Yashruti because the objective medical evidence does not support the level of restriction or all of the limitations proposed by the Dr. Yashruti's opinion. (AR 26.) Specifically, the ALJ claimed that Plaintiff does not require an assistive device to walk, noting that she has full strength in her

extremities.  (AR 26.)  He further stated that the proposed manipulative limitations are not supported by exam findings.  (AR 26.)[7]  An ALJ may reject an examining physician's opinion that is not supported by clinical findings.  *See Magallanes*, 881 F.2d at 754; *see also Batson*, 359 F.3d at 1195 ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, . . . or by objective medical findings." (citation omitted)).

Dr. Yashruti, like Dr. Keller, opined that Plaintiff has full strength in her extremities. However, Dr. Yashruti's opined limitations are not as restrictive as Dr. Keller's opined limitations.  While Dr. Keller opined that Plaintiff can only walk twenty minutes in an eight-hour day, Dr. Yashruti opined that Plaintiff is able to ambulate with a cane for six hours a day and ambulate without an assistive device for two hours a day.  Dr. Yashruti specifically tied these limitations to Plaintiff's mild cervical and thoracic spine degenerative disc disease and degenerative changes in her feet with heel spurs.  Given this difference, the fact that Plaintiff has full strength in her extremities does not undermine Dr. Yashruti's opinion regarding Plaintiff's ability to walk and need for an assistive device. The ALJ does not identify any additional objective evidence that undermines Dr. Yashruti's opinion in this area.  Accordingly, the Court finds this is not a specific and legitimate reason supported by substantial evidence.

ii.   Symptoms Improved and Stabilized with Treatment

Second, the ALJ rejected the level of restriction proposed by Dr. Yashruti because Plaintiff's overall physical symptoms improved and stabilized with treatment.  (AR 26–27.)  As stated above, an impairment that can be controlled effectively by treatment or medication cannot be considered disabling.  *Warre,* 439 F.3d at 1006.

---

[7]   Plaintiff only complains of the ALJ's rejection of Dr Yashruti's opinion related to how many hours Plaintiff can stand/walk without the use of an assistive device.  (ECF No. 11 at 20–21.)  Accordingly, the Court does not address whether the ALJ properly considered the manipulative limitations proposed by Dr. Yashruti.

As discussed above in addressing Dr. Keller's opinion, Plaintiff continually reported improved mobility and function with pain management. Plaintiff also complained primarily of knee and/or back pain when visiting Dr. Smith for pain management from 2017 to 2019, thus suggesting her foot pain had improved or stabilized. (*See, e.g.*, AR 996–1064.) However, Plaintiff's RFC for less than a full range of light work[8] provides that she "can be on her feet . . . four hours (standing or walking) out of an eight-hour workday." (AR 22.) In other words, the RFC suggests that Plaintiff has the capability to walk for four hours in an eight-hour workday without an assistive device. There is nothing in the record after the onset of disability to indicate that Plaintiff can do so, even with improved mobility and function with pain management. Moreover, there is nothing in the record after the onset of disability that is inconsistent with, or undermines, Dr. Yashruti's conclusion that Plaintiff is limited to ambulating with a cane for six hours a day and without an assistive device for two hours a day. Accordingly, the Court finds that this is not a specific and legitimate reason supported by substantial evidence.

### iii.    Lack of Effort During Exam

Third, the ALJ rejected the level of restriction proposed by Dr. Yashruti because of Plaintiff's questionable effort at her two most recent consultative exams. (AR 27.) He noted that "Dr. Whitehead did not provide an opinion because of the claimant's lack of effort at the February 2019 consultative exam and there appears to be a similar lack of effort at the June 2019 consultative exam with Dr. Yashruti." (AR 27.) With respect to Plaintiff's exam with Dr. Yashruti, the ALJ identified Plaintiff's lack of cooperation with range of motion testing and the fact that merely brushing her skin elicited expression of pain. (AR 27.)

---

[8]    "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251 at *5–6 (1983).

Although the ALJ's concern about Plaintiff's apparent lack of effort during her consultative examination is well taken, the Court does not find this to be a specific and legitimate reason supported by substantial evidence for according less weight to Dr. Yashruti's opinion.  First, Dr. Yashruti, a consultative examiner, could have declined to provide an opinion, as Dr. Whitehead did, if he did not feel he had enough information to opine on Plaintiff's limitations based upon her lack of cooperation.  Instead, Dr. Yashruti noted Plaintiff's lack of cooperation and proceeded to render an opinion, implicitly concluding he had adequate medical information to reach the opinions rendered.  Second, as to Plaintiff's complaint of pain in response to light touch, the Court notes that Plaintiff has been diagnosed with fibromyalgia.  Fibromyalgia is "classified by the presence of chronic widespread pain and tactile allodynia," *Montanez v. Astrue*, No. 3:07cv1039 MRK WIG, 2008 WL 3891961, at *8 n.5 (D. Conn. Aug. 1, 2008), which is "pain due to a stimulus that does not normally provoke pain" such as "a light feather touch," *Suzanne O. v. Saul*, No. 3:20cv61, 2021 WL 1195930, at *8 n.4 (E.D. Va. Mar. 30, 2021) (quoting *Allodynia*, National Center for Biotechnology Information, https://www.ncbi.nlm.nih.gov/books/NBK537129/ (last visited March 23, 2021)).  Thus, tenderness to light touch can be one of the symptoms of Plaintiff's diagnosed disease.

Based on the foregoing, the Court finds that the ALJ did not provide specific and legitimate reasons supported by substantial evidence for rejecting the opinion of Dr. Yashruti regarding Plaintiff's ability to walk and need for an assistive device.

### C.    Remand is Appropriate

Plaintiff asks the Court to reverse for the payment of benefits, or in the alternative, remand for the correction of legal errors. (ECF Nos. 11 at 22–23; 14.) Defendant maintains that the ALJ's decision is "supported by substantial evidence and free from legal error," but if the Court overturns the ALJ's decision, remand is the proper remedy.  (ECF No. 12-1 at 8.)

When an ALJ commits error that is not harmless, "[t]he decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court."

*McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).   "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).  Furthermore, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).  On the other hand, "where the record has been fully developed such that further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke*, 379 F.3d at 593.

Here, the ALJ committed legal error that was not harmless,[9] but this is not a case where further administrative proceedings would lack purpose.  Plaintiff argues that the VE testified that Plaintiff would be limited to sedentary work if Dr. Yashruti's opinion was accepted.  (ECF No. 14 at 2.)  However, Plaintiff did not specifically ask the VE about a hypothetical person incorporating Dr. Yashruti's opinion.  Rather, Plaintiff asked the VE during the hearing about a hypothetical person who was only capable of "standing two hours a day but while standing would need to utilize an assistive device and therefore only have one hand and arm available to work."  (AR 57.)  However, Dr. Yashruti opined that Plaintiff is capable of walking and standing without an assistive device for one hour at a time without interruption and for two hours total in an eight-hour workday.  Because this

---

[9]     As noted above, Dr. Keller and Dr. Yashruti were the only two physicians who provided medical opinions after the alleged onset of disability, June 30, 2016.  The Commissioner points to Dr. Moazzaz's opinion as medical support for the ALJ's RFC. (ECF No. 12-1 at 5–6.)  However, Dr. Moazzaz's opinion, dated January 26, 2014, significantly predates the alleged onset date and is therefore of "limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").  The opinions of the State Agency medical consultants similarly predate the alleged onset of disability.  As such, the Court finds that the ALJ's error with respect to Dr. Yashruti is not harmless.

was not explored at the hearing, the record does not reflect what jobs may be available for a person with such limitations.   Therefore, remand for further proceedings is the appropriate remedy.

## VI.   CONCLUSION AND RECOMMENDATION

For the reasons discussed above, the Court **GRANTS** Plaintiff's merits brief, **DENIES** the Commissioner's cross motion, and remands this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated:  March 18, 2022

Hon. Jill L. Burkhardt
United States Magistrate Judge